**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOYCE CARRICO, on behalf of herself and     :
all others similarly situated,     :     <u>Case No.:</u>
    :
           Plaintiff,     :     **<u>CLASS ACTION COMPLAINT</u>**
    :
    v.     :     **<u>JURY TRIALDEMANDED</u>**
    :
KINGLINE NUTRITION, LLC,     :
    :
           Defendant.     :
    :
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Joyce Carrico ("Plaintiff") brings this action against Kingline Nutrition, LLC ("Defendant") in both an individual capacity and on behalf of others similarly situated, and she alleges as follows, based on personal knowledge, counsel's investigation, and information and belief:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff is a visually impaired and legally blind person who uses screen-reading software on her computer to browse and interpret website content.  She uses the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision; others have no vision.

2.      In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States was approximately 1.7 million people.  The American Foundation for the Blind's website states that the 2019 American Community Survey

(conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision impairment.

3.     Plaintiff brings this action against Defendant for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people.  Defendant's denial of full and equal access to its website and the goods and services offered thereby are violations of Plaintiff and the Classes' (as defined below) rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, *et seq.* ("ADA").

4.     Plaintiff browsed and attempted to transact business on Defendant's website, kinglinenutrition.com ("Website" or "Defendant's website").  The reason for Plaintiff's visit to the Website was to purchase chocolate-chip cookie dough.

5.     The Website was and remains noncompliant with the ADA accessibility standards because it presented the following issues, without limitation, both at the time when Plaintiff browsed it and as of the date of the filing of this Complaint: (i) Plaintiff was unable to understand product details on the Website; and (ii) the Website contained empty or otherwise confusing or redundant links.

6.     In particular, while attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually impaired people that include the following, without limitation:

> a.  Nearly all of the photos on the Website only read "picture" rather than providing a description of what is within the photo.  This prevents Plaintiff from making an informed decision as a sighted New York

     customer would, because she is unable to see all of the product details included within the photos on the website.

    b.  The Website also includes graphics on describing the products that are offered and the benefits of the products.  These graphics are not coded to be read out by the screen reader; instead, they are listed as a long number.  This impairs Plaintiff's ability to make an informed decision as a sighted New York customer would.

    c.  On the bottom of the website page, numerous links are not labeled, so Plaintiff is unable to ascertain what is included within that part of the webpage.  This delays Plaintiff from finding products and therefore delays her from completing a purchase as a sighted New York customer would.

7.    The issues that Plaintiff experienced when she attempted to transact business on the Website beginning on or around June 30, 2022, are still found on Defendant's Website as of the date of the filing of this Complaint.  Plaintiff still has the intent to purchase chocolate-chip cookie dough from Defendant's Website, but she is currently unable to.

8.    Plaintiff was highly interested in purchasing the chocolate-chip cookie dough offered by Defendant because she enjoys the taste of it, after having tried it at a friend's party.  Plaintiff remains hopeful that the accessibility barriers are cured, as she intends to return to the Website, in order to purchase the cookie dough from Defendant.

9.    Upon information and belief, there is a real and immediate threat of future injury, similar to the past and current injury alleged herein. Plaintiff has been unable to

purchase the cookie dough because of the accessibility barriers alleged herein, and she plans to do so once the accessibility barriers are addressed. The website is merely a click away and is visited regularly and frequently; but for the accessibility barriers alleged herein, the website will continue to be visited regularly and frequently by Plaintiff.

10.     Since Defendant's Website is and was not equally accessible to Plaintiff and other blind and visually impaired consumers as it is and was to non-visually-disabled consumers, the Website violates the ADA.

11.     Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures, so that Defendant's Website will become and remain accessible to blind and visually impaired consumers. Plaintiff also seeks damages and other forms of relief.

12.     Plaintiff's goal is to have Defendant make reasonable accommodations in its Website, policies, practices, and procedures; indeed, such accommodations are attainable through efficient, inexpensive options and features offered for website development and maintenance that would not cause undue hardships. Quite the opposite: the reasonable accommodations would enable Defendant to benefit its business by catering to a materially wider population of demand with blind and visually impaired consumers.

### JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

14.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* ("NYCHRL").

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District.  A substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize—on a number of occasions—the subject Website from within this District.

16.     Defendant is subject to personal jurisdiction in this District.  Defendant has been and is committing the acts or omissions alleged herein in the District that caused injury and violated rights that the ADA provides to Plaintiff and to other blind or visually-impaired consumers.  A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District because Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in New York County.  These access barriers denied Plaintiff full and equal access to the Website on multiple occasions in the past, and these barriers now deter Plaintiff from accessing the Defendant's Website in the future.

17.     This Court is empowered to issue declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

18.     Plaintiff is a resident of New York, New York.

19.     Plaintiff is a blind, visually impaired, and handicapped person and a member of a protected class of individuals under 42 U.S.C. § 12102(1)-(2) of the ADA, its regulations at 28 CFR §§ 36.101, *et seq*., and the NYCHRL.

20.     Defendant is and was at all relevant times a Idaho limited liability company doing business in New York.  Defendant's Website is a place of public accommodation

within the definition of 42 U.S.C. § 12181(7).  Defendant has a physical address at 11900
Loon St., Caldwell, ID 83605.

## TOOLS FOR WEB CONTENT ACCESSIBILITY

21.     The Internet has become a significant source of information, a portal, and a
tool for commerce and everyday activities, such as shopping, education, banking, research,
and many other activities for sighted, blind, and visually impaired persons alike.

22.     In today's technology-driven world, blind and visually impaired people
have the ability to access websites using keyboards in conjunction with screen-access
software that vocalizes the visual information found on a computer screen.  As defined by
the American Federation for the Blind, a refreshable Braille display used in conjunction
with a computer can provide a blind person access to information on the computer screen
by electronically raising and lowering different combinations of pins on internal cells.
These raised pins correspond to and change as the user moves their cursor in the text on
the computer screen.  This technology is known as screen-reading software.

23.     Screen-reading software is currently the only method a blind or visually
impaired person may utilize to independently access the Internet.  Unless websites are
designed to be read by screen-reading software, blind and visually impaired persons are
unable to fully access websites, and the information, products, and goods contained thereon
are equally out of reach.

24.     Blind and visually impaired users of Microsoft Windows-enabled
computers and devices have several screen-reading software programs available to them.
Some of these programs are available for purchase, and other machines have built-in
integrated software.  NonVisual Desktop Access, otherwise known as "NVDA," is

currently one of the most popular screen-reading software programs available for personal computers.

25.     For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access and interpret the same content available to sighted users.

26.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people.  These guidelines are universally followed by most large business entities and government agencies to ensure that their websites are accessible to all.

27.     Non-compliant websites pose common access barriers to blind and visually impaired persons.  Common barriers encountered by blind and visually impaired persons include the following, without limitation:

a.      A text equivalent for every non-text element is not provided;

b.      Equivalent text is not provided when using scripts;

c.      Forms with the same information and functionality as for sighted persons are not provided;

d.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

e.      Web pages do not have titles that describe the topic or purpose; or

f.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context.

## STATEMENT OF FACTS

### The Barriers on Defendant's Website

28.     Defendant is a limited liability company that owns and operates the Website kinglinenutrition.com and offers and delivers products throughout the United States, including in New York State and New York City.  Defendant has a physical address at 11900 Loon Street, Caldwell, ID 83605.

29.     Defendant offers its Website to the public, so that the general public can transact business on it (among other things).  The goods offered by Defendant's Website include, without limitation, healthy edible cookie dough, keto cookie dough, mug cakes, green powders, and other purportedly healthy forms of sweet snacks.

30.     Upon information and belief, it is Defendant's policy, practice, and procedure to deny Plaintiff, along with other blind or visually impaired users, access to its Website, therefore specifically denying the goods and services that are otherwise offered to the general public.  Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and other blind or visually impaired persons have been and continue to be denied equal access to the goods and services offered to the public on Defendant's Website.

31.     Plaintiff is legally blind and cannot use a computer without the assistance of screen-reading software.  However, Plaintiff is a proficient user of JAWS, a screen-reader software program used by Plaintiff and other blind and visually impaired persons to access the Internet.  Plaintiff has visited the Website on separate occasions using the JAWS screen-reader.

32.     During Plaintiff's visit to the Website on June 30, 2022, and September 26, 2022, Plaintiff encountered multiple barriers that denied Plaintiff full and equal access to the facilities, goods, and services offered and made available to the public, which denied Plaintiff the full enjoyment of the facilities, goods, and services offered on the Website.

33.     While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually impaired people that include the following, without limitation:

    a.  Nearly all the photos on the Website only read "picture" rather than providing a description of what is within the photo. This prevents Plaintiff from making an informed decision as a sighted New York customer would, because she is unable to see all of the product details included within the photos on the website.

    b.  The Website also includes graphics on describing the products offered and their benefits. These graphics are not coded to be read out by the screen reader; instead, they are listed as a long number. This impairs Plaintiff's ability to make an informed decision as a sighted New York customer would.

    c.  On the bottom of the website page, numerous links are not labeled, so Plaintiff is unable to ascertain what is included within that part of the webpage. This delays Plaintiff from finding products and therefore delays her from completing a purchase as a sighted New York customer would.

34.     Plaintiff was highly interested in purchasing the chocolate-chip cookie dough offered by Defendant.  Plaintiff remains hopeful that the accessibility barriers are cured, as she intends to return to the Website, in order to purchase the chocolate-chip cookie dough from Defendant, as soon as the accessibility barriers are cured.

35.     Upon information and belief, there is a real and immediate threat of future injury, similar to the past and current injury alleged herein.  Plaintiff has been unable to purchase the cookie dough because of the accessibility barriers alleged herein, and she plans to do so once the accessibility barriers are addressed.  The website is merely a click away and is visited regularly and frequently; but for the accessibility barriers alleged herein, the website will continue to be visited regularly and frequently by Plaintiff.

<u>Defendant Must Remove Barriers To Its Website</u>

36.     Due to the inaccessibility of Defendant's Website, blind or visually impaired consumers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services that Defendant offers to the public on its Website.  The access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and these access barriers now deter Plaintiff on a regular basis from visiting the Website, presently and in the future.

37.     These access barriers on Defendant's Website have deterred Plaintiff from learning about the various cookie doughs and other snacks offered for purchase and delivery and enjoying them equally to sighted individuals because Plaintiff was unable to determine information concerning such items and/or purchase items from the Website, among other things.

38.     If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals are able to do.

39.     Through her attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

40.     Because simple compliance with the WCAG 2.1 guidelines would provide Plaintiff and other visually impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including the following policies or practices, without limitation:

a.      Constructing and maintaining a website that is inaccessible to Blind or visually impaired individuals, including Plaintiff;

b.      Failure to construct and maintain a website that is sufficiently intuitive, so as to be equally accessible to blind or visually impaired individuals, including Plaintiff; and

c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind or visually impaired consumers, such as Plaintiff, as a member of a protected class.

41.     Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of Plaintiff and others similarly situated, as alleged herein.

42.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy[.]  42 U.S.C. § 12188(a)(2).

43.    Because the Website has never been equally accessible and because Defendant does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff and Defendant ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website.  Plaintiff seeks that this permanent injunction would require Defendant to cooperate with the Agreed Upon Consultant to do the following:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c.    Regularly test user accessibility by blind or vision impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and

d.    Develop an accessibility policy that is clearly disclosed on Defendant's Websites, with contact information for users to report accessibility-related problems.

44.    If the Website was accessible, Plaintiff and similarly situated blind and visually impaired people could independently view service items and shop for and otherwise research related goods and services available through the Website.  Although

Defendant may currently have policies in place regarding the maintenance and operation of its Website, Defendant lacks a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, blind and visually impaired consumers.

45.     Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from the Website.  These amounts are far greater than the associated cost of making the Website equally accessible to visually impaired customers.  Making the Website equally accessible would be attainable through efficient, inexpensive options and features offered for website development and maintenance that would not cause undue hardships.  Quite the opposite: the reasonable accommodations would enable Defendant to benefit its business by catering to a materially wider population of demand with blind and visually impaired consumers.

46.     Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Website, thus violating their rights.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2) that includes all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result, have been denied access to the equal enjoyment of goods and services during the relevant statutory period ("Class").

48.     Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York City subclass ("Sub-Class" and together with "Class," "Classes") that includes all legally blind individuals in New York City who have attempted to access

Defendant's Website and as a result, have been denied access to the equal enjoyment of goods and services during the relevant statutory period.

49.     Common questions of law and fact exist amongst the Classes, including the following, without limitation:

a.     Whether Defendant's Website is a "public accommodation" under the ADA;

b.     Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.     Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.     Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL.

50.     Plaintiff's claims are typical of the Class and Sub-Class.  Similar to the Plaintiff, the Class and Sub-Class are comprised of persons who are severely visually impaired or otherwise blind, who will claim that Defendant has violated the ADA or NYCHRL by failing to update or remove access barriers on its Website, so that it can be independently accessible to the Class and Sub-Class.

51.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Sub-Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation and because Plaintiff has no interests antagonistic to the Class and Sub-Class.  Class certification of the claims is appropriate

under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole.

52.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Sub-Class members predominate over questions affecting only individual Class and Sub-Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

53.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE ADA, 42 U.S.C. § 12181, *ET SEQ.*

54.     Plaintiff, on behalf of herself and the Class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55.     Section 302(a) of Title III of the ADA provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a).

56.     Defendant's Website is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  The Website is a service that is offered to the general public and as such, must be equally accessible to all potential consumers.

57.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations offered by an entity.  42 U.S.C. § 12182(b)(1)(A)(i).

58.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.   42 U.S.C. § 12182(b)(1)(A)(ii).

59.     Under Section 302(b)(2)(A) of Title III of the ADA, unlawful discrimination also includes the following, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; … a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

60.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder.  Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).  Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are supplied to other patrons who are not disabled, and has been offered

services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  The foregoing violations are ongoing.

61.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE NYCHRL

62.     Plaintiff, on behalf of herself and the New York City Sub-Class members, repeats and realleges allegations 1 through 53 as if fully set forth herein.

63.     N.Y.C. Administrative Code § 8-107(4)(a) provides that:

It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof.

64.     Defendant's Website is a sales establishment and public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9).

65.     Defendant is subject to NYCHRL because it owns and operates its Website and offers goods and services to residents of New York City, thereby making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

66.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing its Website and the services integrated with such Website to be completely inaccessible to blind persons residing in New York City.  This inaccessibility denies blind patrons residing in New York City the full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

67.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Admin. Code § 8-107(15)(a).

68.     Defendant's actions constitute willful and intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has done the following:

a.     constructed and maintained a website that is inaccessible to blind Sub-Class members with knowledge of the discrimination;

b.     constructed and maintained a website that is insufficiently intuitive and/or obvious that is inaccessible to blind Sub-Class members; and/or

c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind Sub-Class members.

69.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These foregoing violations are ongoing.

70.     As such, Defendant through its Website discriminates and will continue in the future to discriminate against Plaintiff and the proposed Class and Sub-Class members on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations, and/or opportunities of its Website under § 8-107(4)(a) and/or its implementing regulations.  Unless the Court enjoins Defendant from

continuing to engage in these unlawful practices, Plaintiff and the Class and Sub-Class members will continue to suffer irreparable harm.

71.     Defendant's actions were and are in violation of the NYCHRL, and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

72.     Plaintiff is also entitled to compensatory damages and civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a), for each offense, as well as punitive damages pursuant to § 8-502.

73.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

74.     Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
#### DECLARATORY RELIEF

75.     Plaintiff, on behalf of herself and the Class and Sub-Class members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and upon information and belief that Defendant denies, that its Website contains access barriers denying visually impaired and blind consumers the full and equal access to the products, services, and facilities offered on the Website, which Defendant owns, operates, and controls, and which fails to comply with applicable laws including, without limitation, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the visually impaired and blind.

77.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.      A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code §§ 8-107, *et seq*., and the laws of New York;

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to ensure that its Website is in full compliance with the requirements set forth in the ADA and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired and blind individuals;

c.      A declaration that Defendant owns, maintains, and/or operates its Website in a manner that discriminates against the visually impaired and blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y.C. Administrative Code §§ 8-107, *et seq*., and the laws of New York;

d.      An order certifying the Class and Sub-Class under Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof,

including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Sub-Class for violations of their civil rights under NYCHRL;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury.

DATED:  October 12, 2022

/s/ Justin S. Nematzadeh

**NEMATZADEH PLLC**
Justin S. Nematzadeh
101 Avenue of the Americas, Suite 909
New York, NY 10013
(T) (646) 799-6729
Email: jsn@nematlawyers.com

*Attorney for Plaintiff*